[656 NYS2d 283]

In the Matter of JAMES THOMAS GUCCIARDO, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, April 7, 1997

### APPEARANCES OF COUNSEL

*Frank A. Finnerty,* Syosset *(Robert P. Guido* of counsel), for petitioner.

*Arthur Goldstein,* Huntington, for respondent.

### OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent was charged with 35 allegations of professional misconduct. The Special Referee

sustained 25 of the charges and failed to sustain Charges One, Eight, Nine, Ten, Seventeen, Eighteen, Nineteen, Thirty-Two, Thirty-Three, and Thirty-Four. The petitioner moves to (1) confirm the findings of the Special Referee insofar as he sustained Charges Two through Seven, Eleven through Sixteen, Twenty through Thirty-One, and Thirty-Five, (2) confirm the findings of the Special Referee insofar as he failed to sustain Charges Eighteen and Nineteen, and (3) disaffirm the findings of the Special Referee insofar as he failed to sustain Charges One, Eight, Nine, Ten, Seventeen, Thirty-Two, Thirty-Three, and Thirty-Four. The respondent cross-moves to (1) confirm the findings of the Special Referee insofar as he failed to sustain Charges One, Eight, Nine, Ten, Seventeen, Eighteen, Nineteen, Thirty-Two, Thirty-Three, and Thirty-Four, and (2) disaffirm the findings of the Special Referee insofar as he sustained Charges Six, Seven, Eleven through Sixteen, Twenty through Twenty-Three, and Thirty.

Charge One alleged that the respondent neglected a legal matter entrusted to him from about February 1992 until about October 1995 in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30 [a] [3]).

On or about March 6, 1989, the respondent was retained by Ted Herwerth to prosecute a claim for damages arising from personal injuries he sustained in an automobile accident that occurred on May 22, 1985. The retainer, signed by Ted Herwerth and his father, Rolf Herwerth, provided that the respondent would be entitled to a contingent fee amounting to $33^1/3\%$ of any sums recovered. In or about April 1989, the respondent commenced an action in Supreme Court, Suffolk County, on behalf of Ted Herwerth as plaintiff against Peter Leahy, Christopher Leahy, and Waldbaum's Supermarkets, Inc. On or about May 3, 1991, the respondent filed a retainer statement with the Office of Court Administration (hereinafter OCA). Prior to January 1992 the respondent had knowledge that the Metropolitan Life Insurance Company (hereinafter Met Life) was asserting a lien in the sum of $80,693.20 against any recovery in the lawsuit for injury-related charges paid for Ted Herwerth.

In or about January 1992, the parties agreed to settle for the sum of $800,000 to be paid by the defendants to Ted Herwerth and apportioned as follows: the sum of $100,000 from the defendants Peter and Christopher Leahy, and the sum of

$700,000 from the defendant Waldbaum's Supermarkets, Inc. On or about January 31, 1992, Ted Herwerth executed two general releases prepared by the respondent. On or about February 6, 1992, the respondent sent a letter to Brian McElhenny, one of the attorneys for Waldbaum's, enclosing a general release, and stating in part:

"I have also enclosed a copy of a letter from Metropolitan claiming a lien for $80,693.20. I do not know of any other lien.

"It is also agreed that the plaintiff and I will hold your office, Waldbaum's and Royal Insurance harmless and indemnify you for any lien on the file. In that regard I am willing to hold the amount claimed by Metropolitan in escrow pending settlement with them."

On or about February 13, 1992, the respondent received a check from the Leahys' insurer, in the amount of $100,000 payable to "Theodore Herwerth and James T. Gucciardo, Esq., as and for the settlement on behalf of the Leahy defendants". On or about February 13, 1992, the respondent endorsed the names of the payees to the aforesaid check and caused the check to be deposited into his trust account. On or about February 20, 1992, the respondent caused the sum of $40,000 to be withdrawn from the trust account for his personal use, leaving a balance of $65,589.97 in the trust account.

By letter dated February 24, 1992, Brian W. McElhenny forwarded to the respondent a check dated February 19, 1992, for $700,000 payable to "Theodore [and] Herwerth [sic] and James Gucciardo, Esq. his attorney" representing Waldbaum's portion of the settlement. The letter states in part:

"Pursuant to the release and stipulation of discontinuance and your agreement to pay the lien of Metropolitan out of the settlement proceeds, I enclose Royal's settlement draft for $700,000.

"This will also confirm you will either pay the lien or hold a sufficient sum in escrow to cover the lien."

On or about February 26, 1992, the respondent endorsed the name of the payees to the check and caused the same to be deposited to his trust account. On February 26, 1992, the respondent caused the sum of $70,000 to be withdrawn from the trust account for his personal use.

On or about March 23, 1992, the respondent delivered a teller's check to Ted Herwerth in the sum of $452,200 drawn against the settlement funds then in the respondent's trust account. On or about March 27, 1992, the respondent sent a let-

ter to Metropolitan Life, stating, in part, "your policy does not give you a lien merely a right to subrogation". On March 29, 1992, the respondent sent a letter to his client, Ted Herwerth, stating in part, "With regard to Metropolitan, they have a lien".

On or about August 14, 1992, the respondent refused to meet and discuss matters relating to the lawsuit with Ted and Rolf Herwerth. In September 1992, Ted Herwerth negotiated a settlement directly with Met Life and it was agreed that Met Life would accept the sum of $27,000 in satisfaction of the lien. On September 8, 1992, the balance in respondent's trust account fell to $69,020.45. From September 1992 through November 1992, the respondent ignored the repeated demands of Ted Herwerth and Met Life to satisfy the lien and disburse the remaining settlement funds. On or about November 20, 1992, Ted Herwerth filed a grievance against the respondent.

On or about December 3, 1992, the respondent delivered a check to Ted Herwerth in the amount of $54,000 payable to Ted Herwerth, and drawn against the respondent's trust account. On February 17, 1993, the balance in the respondent's trust account fell to $20,366.03. From on or about December 1992 through on or about October 5, 1994, the respondent failed to comply with the repeated demands of Ted Herwerth and Met Life to disburse the remaining settlement funds. On or about October 5, 1994, the respondent caused the delivery to Met Life of the sum of $20,000 which Met Life agreed to accept in full settlement of their lien. On or about April 26, 1995, the respondent caused the delivery of the sum of $7,200 to Ted Herwerth. On or about May 1, 1995, the respondent filed a closing statement with OCA.

Charge Two alleged that by his actions, the respondent failed to promptly disburse client funds in violation of Code of Professional Responsibility DR 9-102 (C) (4) (22 NYCRR 1200.46 [c] [4]).

Charge Three alleged that by failing to promptly disburse funds the respondent violated Rules of the Appellate Division, Second Department (22 NYCRR) § 691.20 (d) (1).

Charge Four alleged that by failing to timely file a retainer statement with OCA, the respondent has violated Rules of the Appellate Division, Second Department (22 NYCRR) § 691.20 (a).

Charge Five alleged that by failing to timely file a closing statement with OCA, the respondent has violated Rules of the

Appellate Division, Second Department (22 NYCRR) § 691.20 (b) (1).

Charge Six alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]) by endorsing the name of Ted Herwerth to each of the settlement checks without the knowledge or consent of Ted Herwerth.

Charge Seven alleged that by signing the name of Ted Herwerth to the settlement checks, the respondent engaged in conduct which adversely reflects on his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Charge Eight alleged that the respondent violated Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]) by converting client funds to his own use and benefit. The respondent's withdrawal of $40,000 from his escrow account on February 20, 1992, thereby resulting in a balance of $65,589.97 in the escrow account, constituted a wrongful invasion and conversion of the settlement funds the respondent should have been preserving for the benefit of his client, Ted Herwerth.

Charge Nine alleged that by his conversion of funds the respondent violated Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

Charge Ten alleged that by his conversion of funds, the respondent violated Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Charge Eleven alleged that the respondent violated Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]) by converting client funds to his own use and benefit. From on or about February 13, 1992 through December 3, 1992, the respondent's failure to maintain a balance in his trust account of at least the sum of $81,133.33 constituted a wrongful invasion and conversion of the settlement funds.

Charge Twelve alleged that by his conversion of funds, as set out in Charge Eleven, the respondent violated Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

Charge Thirteen alleged that by his conversion of funds, the respondent violated Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Charge Fourteen alleged that the respondent converted client funds to his own use and benefit in violation of Code of

Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]). From on or about December 3, 1992 through October 5, 1994, the respondent's failure to maintain a balance in his trust account of at least $27,133.33 constituted a wrongful invasion and conversion of the settlement funds.

Charge Fifteen alleged that by the aforesaid conversion, the respondent violated Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

Charge Sixteen alleged that by the aforesaid conversion, the respondent violated Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Charge Seventeen alleged that the respondent violated Code of Professional Responsibility DR 2-106 (A) (22 NYCRR 1200.11 [a]) by attempting to charge and collect an illegal and excessive fee. During the course of his representation of Ted Herwerth, the respondent attempted to charge and collect a fee in excess of $33^1/_3$ % of the sums actually recovered by the settlement.

Charge Twenty alleged that the respondent knowingly made a false statement of law or fact while representing a client, in violation of Code of Professional Responsibility DR 7-102 (A) (5) (22 NYCRR 1200.33 [a] [5]) . On or about March 16, 1994, the respondent sent a letter to Met Life stating, in part: "Please be advised that Mr. Herwerth does not owe you $27,000. Therefore I am not holding that amount." On or about March 29, 1994, the respondent had a telephone conversation with John McConnell of Met Life's Subrogation Unit, wherein the respondent stated to McConnell that he still had the $27,000 in escrow.

Charge Twenty-One alleged that by his actions as set out in Charge Twenty the respondent violated Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Charge Twenty-Two alleged that the respondent's oral statement to John McConnell was false inasmuch as the respondent knew or should have known that there was only $20,875.51 on deposit in his trust account at that time. By reason of the foregoing, the respondent has violated Code of Professional Responsibility DR 7-102 (A) (5) (22 NYCRR 1200.33 [a] [5]).

Charge Twenty-Three alleged that by his actions set out in Charge Twenty-Two, the respondent violated Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Charge Twenty-Four alleged that from on or about November 30, 1990 through June 30, 1994, the respondent's trust account

generated interest totaling approximately $17,849.16. The interest was generated in whole, or in part, on funds in the trust account belonging to clients of the respondent and/or third persons. The respondent failed to promptly notify any of the clients or third persons that their funds had earned interest. By reason of the foregoing, the respondent has violated Code of Professional Responsibility DR 9-102 (C) (1) (22 NYCRR 1200.46 [c] [1]).

Charge Twenty-Five alleged that by his actions set out in Charge Twenty-Four, the respondent has violated Code of Professional Responsibility DR 9-102 (C) (3) (22 NYCRR 1200.46 [c] [3]).

Charge Twenty-Six alleged that the respondent failed to promptly pay or deliver to the clients or third persons any of the interest earned on the funds in the respondent's trust account, in violation of Code of Professional Responsibility DR 9-102 (C) (4) (22 NYCRR 1200.46 [c] [4]).

Charge Twenty-Seven alleged that the respondent converted to his own use and benefit the interest generated on funds belonging to clients and/or third persons in his trust account, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

Charge Twenty-Eight alleged that in converting the interest, the respondent violated Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).

Charge Twenty-Nine alleged that in converting the interest in his trust account, the respondent violated Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Charge Thirty alleged that from December 1990 through February 1995, the respondent wrongfully commingled personal funds with client funds in his trust account, in violation of Code of Professional Responsibility DR 9-102 (A) (22 NYCRR 1200.46 [a]).

Charge Thirty-One alleged that from December 1990 through February 1995, the respondent failed to properly maintain bank and bookkeeping records relating to his trust account, in violation of Code of Professional Responsibility DR 9-102 (D) (22 NYCRR 1200.46 [d]).

Charge Thirty-Two alleged that the respondent has engaged in self-dealing and overreaching during the course of a business transaction entered into with a client. On or about March 30, 1983, Robert Carillo was president of Karma Equities Ltd.

(hereinafter Karma). Prior to March 30, 1983, the respondent had represented Karma and Robert Carillo in various legal matters. On or about March 30, 1983, Karma loaned to the respondent the sum of $40,000, which the respondent promised to repay over a period of two to three years with 13% interest.

At the time of the loan transaction, Karma expected the respondent to exercise his professional judgment for the protection of Karma in the loan transaction. The respondent failed to reduce the aforesaid loan transaction to writing, or take other action to secure the interests of Karma. Thereafter, the respondent failed to repay any part of the loan.

In or about January 1987, Karma commenced an action in Supreme Court, Nassau County, to recover payment of the loan. In or about May 1992, after a jury trial, a verdict was rendered in favor of Karma against the respondent. On or about August 24, 1992, a judgment was duly entered against the respondent in the amount of $79,740 inclusive of costs and interest. Thereafter, the respondent appealed and by decision and order dated December 27, 1994, this Court affirmed the judgment (Karma Equities v Gucciardo, 210 AD2d 456). To date, the respondent has failed to satisfy the judgment. By reason of the foregoing, the respondent has violated Code of Professional Responsibility DR 5-104 (A) (22 NYCRR 1200.23 [a]).

Charge Thirty-Three alleged that by his actions, set out in Charge Thirty-Two, the respondent violated Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

Charge Thirty-Four alleged that by his actions set out in Charge Thirty-Two, the respondent violated Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Charge Thirty-Five alleged that the respondent has wrongfully commingled personal funds with escrow funds in violation of Code of Professional Responsibility DR 9-102 (A) (22 NYCRR 1200.46 [a]). On or about March 30, 1993, the loan proceeds received by the respondent from Karma were deposited into the respondent's then-existing escrow account. By reason of the foregoing, the respondent violated Code of Professional Responsibility DR 9-102 (A) (22 NYCRR 1200.46 [a]).

Upon review of the evidence adduced, we find that the Special Referee erred in failing to sustain Charges One, Eight,

Nine, Ten, Seventeen, Thirty-Two, Thirty-Three, and Thirty-Four. Thus, the petitioner's motion to confirm in part and disaffirm in part the report of the Special Referee is granted and Charges One through Seventeen and Twenty through Thirty-Five are sustained. The branch of the respondent's cross motion which is to confirm in part the report of the Special Referee is granted only to the extent that Charges Eighteen and Nineteen are not sustained, and the respondent's cross motion is otherwise denied.

In determining an appropriate measure of discipline to impose, we have considered the measure of success gained by the respondent for his client in what was a very difficult case and his impressive background of public service. However, the respondent has been the recipient of two prior Letters of Caution. The first, issued in 1985, involved his improperly imposing a retaining lien on escrow funds and improperly seeking a general release from the client as a condition for release of the escrow. The second was issued on June 21, 1996, to ensure that any sworn statement the respondent makes be as accurate as possible. Under the totality of the circumstances, the respondent is suspended from the practice of law for three years.

MANGANO, P. J., BRACKEN, ROSENBLATT, MILLER and RITTER, JJ., concur.

Ordered that the petitioner's motion to confirm in part and disaffirm in part the report of the Special Referee is granted in its entirety; and it is further,

Ordered that the branch of the respondent's cross motion which is to confirm in part the report of the Special Referee is granted only to the extent that Charges Eighteen and Nineteen are not sustained, and the respondent's cross motion is otherwise denied; and it is further,

Ordered that the respondent, James Thomas Gucciardo, is suspended from the practice of law for a period of three years, commencing May 7, 1997, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the three-year period, upon furnishing satisfactory proof (a) that during that period he refrained from practicing or attempting to practice law, (b) he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (Rules of App Div, 2d Dept [22 NYCRR] § 691.10), and (c) he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, James Thomas Gucciardo, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.